J-S75009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RONALD ALSTON :
:
Appellant : No. 363 EDA 2018

Appeal from the PCRA Order January 10, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0203312-2005
CP-51-CR-0204542-2005
CP-51-CR-0204551-2005

BEFORE:  PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.:                          **FILED JUNE 21, 2019**

Ronald Alston appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Appellant challenges the denial of an evidentiary hearing, and asserts various claims of ineffectiveness of trial counsel.  We affirm on the basis of the PCRA court opinion.

This case has a long and somewhat convoluted history.  In its opinion, the PCRA court sets forth the relevant facts and procedural history for this appeal.  **See** PCRA Court Opinion, 4/16/18.[1]  Therefore, we need not restate them at length here.

---

[1] Although filed on April 16, 2018, the PCRA opinion is dated March 30, 2018, and is sometimes referred to as such in the briefs and the record.

Briefly summarized for purposes of this appeal and the convenience of the reader, we note that after a bench trial, the court found Appellant guilty of attempted murder and numerous related offenses. Appellant's conviction arose out of an incident on October 14, 2004, at approximately 7:45 p.m. Appellant and at least six co-conspirators opened fire on Charles Wesley, Wesley's paramour, Sharee Norton, and their two children. It was the second attempt on Wesley's life that day.

The assailants fired at least fifty-seven gunshots from eight semi-automatic pistols before fleeing. Two Philadelphia police detectives and two police officers were already in the immediate area investigating the previous shooting. At least two civilians also witnessed the gunmen open fire. One of the police officers involved was Detective Ronald Dove, who testified at the trial.

The police returned fire and, when the shooters fled, pursued them on foot. Backup officers in a marked police car intercepted the gunmen and the police arrested them. The arrestees, including Appellant, were placed in holding cells at Central Detectives. While the arrestees were in holding, a police detective overheard Appellant and several of his co-conspirators talking and laughing about the shooting incident. The detective testified at trial about the inculpatory statements.

Norton also testified at Appellant's trial. She claimed that when Wesley heard the assailants say, "There's Charles," he said, "Oh shit, that's them, get

out of here." PCRA Court Opinion, at 21; *see also* Appellant's Brief, at 23, 25. Norton was a reluctant witness who admitted she was scared to testify. *See* Appellant's Brief, at 23. Wesley did not cooperate with the police, and did not testify. *See id.* at 23-24.

Before trial, Appellant got into a fee dispute with his original trial counsel, Todd Henry, Esq. The court permitted Attorney Henry to withdraw. Thomas Strange, Esq., was appointed as substitute trial counsel. Attorney Strange was in the same firm as Mr. Henry.

On November 18, 2005, after a bench trial, the court convicted Appellant of one count of attempted murder, eight counts of aggravated assault, and one count each of carrying firearms without a license, and criminal conspiracy.[2] On September 18, 2006, the court sentenced Appellant to an aggregate term of not less than twenty nor more than forty years of incarceration in a state correctional institution. The court denied a motion for reconsideration of sentence. On direct appeal, this Court affirmed the judgment of sentence on July 23, 2008. *See Commonwealth v. Alston*, 959 A.2d 956 (Pa. Super. 2008) (unpublished memorandum). Appellant filed a timely first PCRA petition. Our Supreme Court remanded for a hearing on whether then-counsel had abandoned Appellant. *See Commonwealth v. Alston*, 969 A.2d 1181 (Pa. 2009).

---

[2] Appellant's six co-defendants were convicted of similar offenses.

After a hearing, various appeals and petitions not at issue here, on August 29, 2016, appointed counsel filed the instant amended PCRA petition. In this petition, Appellant alleged, among other complaints, that he had "newly discovered evidence" regarding one of the police detectives involved in this case, Detective Dove. Appellant cited a newspaper account reporting that years after the events at issue here, Dove helped his paramour, who had murdered her ex-husband, flee from Pennsylvania. Appellant also asserted it was improper for Dove to have testified as a witness in the same trial where he had been one of the arresting officers.

On January 10, 2018, after proper notice, the PCRA court dismissed the petition without a hearing. This appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents seven issues—framed as two questions and six subsidiary questions:

> I. Whether the [c]ourt erred in not granted an evidentiary hearing on the claims set forth in the Amended PCRA petition alleging [c]ounsel was ineffective[?]
>
> II. Whether the [c]ourt erred in not granting relief on the PCRA petition alleging prior [c]ounsel was ineffective for the following claims:
>
>> a. Counsel Henry was ineffective for failing to notify Appellant of his intent to withdraw and Counsel Strange had a conflict of interest[?]
>>
>> b. Trial [c]ounsel was ineffective for failing to object to hearsay evidence[?]

- 4 -

     c. Trial [c]ounsel was ineffective for failing to investigate whether or not Charles Wesley had implicated the Appellant[?]

     d. Trial [c]ounsel was ineffective for failing to object to Detective Dove's conflicting interest during trial[?]

     e. Newly discovered evidence regarding Detective Dove's firing and charges against him necessitate a new trial[?]

     f. Counsel was ineffective for failing to file post-trial motions that the verdict was against the weight of the evidence[?]

Appellant's Brief, at 8.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court, we conclude that there is no merit to the issues Appellant has raised on appeal.

The PCRA court opinion properly disposes of the questions presented. *See* PCRA Court Opinion, 4/16/18, at 12-39 (concluding: (1) Appellant failed to present genuine issues of material fact, and PCRA court properly acted within its discretion by declining to grant evidentiary hearing; (2) Appellant failed to prove that Attorney Henry failed to give timely notice of withdrawal; PCRA court properly granted petition to withdraw after fee dispute; and Appellant failed to prove that substitute counsel, Attorney Strange, had conflict of interest because he was from same firm as Attorney Henry; (3) trial counsel was not ineffective for failure to object to purported hearsay where Norton's testimony was incidental, innocuous and did not prejudice Appellant; (4) trial counsel was not ineffective for failing to investigate whether or not

Wesley had implicated Appellant or to call Charles Wesley as a witness where Appellant failed to prove: (a) Wesley was willing to testify; (b) was available; (c) counsel knew or should have known of witness; (d) Wesley was prepared to cooperate, and (e) lack of Wesley's testimony prejudiced Appellant; (5) trial counsel was not ineffective for choosing not to object to Detective Dove's testimony where evidence of his "dual role" as "victim" in shooting and investigator of crime did not constitute conflict of interest, and Appellant offered no authority to support his boilerplate claim or unusual theory to contrary; Dove's termination and criminal charges against him five years later for helping his girlfriend flee from murder charge did not constitute previously unavailable newly discovered facts for this case; Appellant failed to plead and prove that evidence against Dove would not be used solely for impeachment, or that evidence, if produced, at trial, would have altered outcome of case; and (6) Appellant failed to develop or support his claim challenging weight of the evidence, and evidence against him, including eyewitness bystander testimony, police testimony, ballistics evidence, and Appellant's holding cell admissions, was overwhelming).

We agree with the PCRA court's legal reasoning and adopt it as our own. Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 6/21/2019*

CP-51-CR-0203312-2005 Comm. v. Alston, Ronald
Opinion

8096326191

**IN THE COURT OF COMMON PLE**
**FIRST JUDICIAL DISTRICT OF PENNSY**
**TRIAL DIVISION – CRIMINAL SEC1**

COMMONWEALTH OF PENNSYLVANIA   :   CP-51-CR-0203312-2005
                                       :   CP-51-CR-0204542-2005
                                       :   CP-51-CR-0204551-2005

                    v.                   :

                                       :   **SUPERIOR COURT**
        **RONALD ALSTON**              :   **NO. 363 EDA 2018**

**OPINION PURSUANT TO PA.R.A.P. 1925(a)**

**MAZZOLA, WILLIAM, J.**                       **MARCH *3⍦*, 2018**

## I.    INTRODUCTION AND FACTUAL AND PROCEDURAL HISTORIES

This is an appeal from the dismissal of the defendant Ronald Alston's petition for relief under the Post Conviction Relief Act (PCRA), *42 Pa.C.S. § 9541-46.* The factual history of his case has already been thoroughly set forth in his previous proceedings and need only be briefly summarized. At the conclusion of a nonjury trial held from November 9 to 18, 2005, he was convicted of nine counts of aggravated assault and one count each of attempted murder, carrying firearms without a license and criminal conspiracy. Six codefendants were convicted of similar charges. The charges arose from a mass armed assault on an individual by the name of Charles Wesley on October 14, 2004, in the area of the 2500 block of North 33rd Street in the City of Philadelphia during which several people were caught in the cross fire, including four police officers who pursued the defendants and managed to capture some of them not very far away, including this defendant. Only two of those individuals figure in the defendant's present underlying claims, one of the officers involved, Detective Ronald Dove, and a woman who was the mother of Wesley's child and with him at the time, Sharee Norton. They were two of the Commonwealth's many witnesses at trial. The defendant was sentenced on September 18, 2006, to an aggregate term of twenty (20) to forty (40) years' incarceration and his reconsideration

1

motion was denied on the 28th. The procedural history is a bit more complex and it and the claims under review require a much more elaborate discussion.

This Court affirmed the judgment of sentence in his direct appeal on June 7, 2007, ruling that his claim that the evidence was against the weight of the evidence was waived because he failed to raise it below and that the court did not err in allowing the testimony of a police officer about a conversation the defendant had with two of his codefendant's while they were in custody at the Police District shortly after their arrest.[1] *Commonwealth v. Alston, 2877 EDA 2006, 959 A.2d 956 (Pa.Super. 2008)* (unpublished memorandum). No timely *allocatur* petition was filed, but on September 24, 2008, the defendant filed *pro se* a Petition for Leave to File a Petition for Allowance of Appeal Nunc Pro Tunc in our Supreme Court, followed by what was docketed as an Application for Relief on March 6, 2009. *Commonwealth v. Alston, 152 EM 2008, 600 Pa. 636, 969 A.2d 1181 (2009).* On April 14, 2009, the Court remanded the case to this court ". . . to hold a hearing and determine . . . whether counsel . . . abandoned representation of Petitioner [and if] the trial court determines that counsel abandoned Petitioner, counsel is directed to file a Petition for Allowance of Appeal on Petitioner's behalf . . ."[2] Before the PCRA court could act, however, the Supreme Court entered an order on May 8th stating "Reconsideration Time Expired/Case Closed" and the court assumed that rendered the question moot. However, the defendant filed a PCRA petition *pro se* on August 18th claiming ineffective assistance by his appellate counsel in failing to file a petition for *allocatur*. New counsel was appointed who filed an amended petition on November 16, 2010, reasserting that claim and adding the claim that trial

---

[1] In his *Pa.R.A.P. 1925(b)* Concise Statement of Errors Complained of on Appeal he included a claim that the evidence was insufficient to sustain the verdicts but apparently did not pursue that issue in his brief. The trial court did address the merits of both that and the weight claim in its *Pa.R.A.P. 1925(a)* opinion which is discussed *infra* because it is applicable to one of the underlying claims here.

[2] The trial court docket lists the order as "Order Granting Petition for Leave to Appeal Nunc Pro Tunc", but that is incorrect. The order specifically states that the defendant may file the late petition only if the *PCRA* court first determines that he was abandoned by counsel, and thus, if the court finds he was not, he could not do so.

2

counsel rendered ineffective assistance for failing to present a challenge to the weight of the evidence.[3] The Commonwealth filed a motion to dismiss on December 7, 2011, the court issued a notice of intent to dismiss pursuant to *Pa.R.Crim.P. 907* on May 1, 2012, formally dismissed the petition without a hearing on June 5th and an appeal was filed on the 29th. The issues were:

> Whether the PCRA court erred by denying the defendant post-conviction relief, the petitioner's right to file a post sentence motion raising a claim that the verdict was against weight of the evidence, nunc pro tunc and the right to file a Petition for Allowance of Appeal nunc pro tunc. [*Sic*]

Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b). The court filed a *Pa.R.A.P. 1925(a)* opinion addressing those issues on September 17, 2012, but on July 10, 2013, this Court entered a memorandum noting the defendant's *pro se* petition for leave to file a petition for allowance of appeal *nunc pro tunc* and our Supreme Court's order of April 14, 2009, and ruled: "Under the circumstances of this case, we deem Appellant's PCRA petition to be premature. Until the status of Appellant's direct appeal is finally resolved in accordance with our Supreme Court's April 14, 2009 order, the PCRA court lacks jurisdiction to consider Appellant's PCRA petition." *Commonwealth v. Alston, No. 1843 EDA 2012 (Pa.Super. 2013).* It then quashed the appeal, "since the PCRA court was without jurisdiction to enter" the order dismissing the petition, and remanded with the instruction that the court comply with the Court's order of April 14th. On August 13 and 14, 2014, the court conducted a hearing on whether his appellate counsel abandoned him at which the Commonwealth called that attorney to the stand.

> Q. Do you recall the date that the Superior Court affirmed the convictions?
> A. I believe it was July 23, 2008.
> Q. And did you advise the defendant of the Superior Court's decision?
> A. I sent him a letter on August 1, 2008 advising him of the decision and enclosing the opinion of the Superior Court.
> [Whereupon the letter was marked and identified and the witness asked to read it].
> A. Sure. "Dear Ronald, I am enclosing a copy of the Superior Court's opinion in the above-captioned matter in which they deny your appeal and affirm the decision of the trial court. Taking into account your desire to raise the

---

[3] Counsel filed a second amended petition on June 7, 2011, but it reads the same as the first.

3

ineffectiveness of trial counsel and the small chance that the Supreme Court will accept your appeal, your best option now is to file a petition under the Post Conviction Relief Act. Please be advised that a PCRA petition must be filed within one year from July 23, 2008 or you will be barred from raising your claims of ineffective assistance of counsel. I am also enclosing copies of all discovery materials in my possession. Please contact me if you wish to discuss the matter further. Very truly your[s], Neal M. Masciantonio."

Q. Did you ever receive a response from the defendant?

A. I did not.

Q. In his pleading, the defendant claims that he expressed a continued interest throughout the process to exhaust all statewide remedies.

Do you remember him telling you that?

A. No, I don't remember him telling me that.

Q. Now, at some point later on in the case, did you ever receive correspondence from the Pennsylvania Supreme Court regarding this case?

A. Yes.

Q. And did you respond to that?

A. Yes.

[Whereupon counsel's letter responding to the Supreme Court's inquiry was marked and identified and the witness asked to read it.]

A. "Since I received no response from Mr. Alston, I made the decision not to file a petition for allowance of appeal after reviewing the standards set forth in PA Rule of Appellate Procedure 1114, Considerations Governing Allowance of Appeal. As I advised Mr. Alston, it was very unlikely that the Supreme Court would accept the case for review since it was not a case of first impression, nor did the decision conflict with Supreme Court decisions. In addition, it was my understanding that Mr. Alston was anxious to pursue relief under the Post Conviction Relief Act since the beginning. His principal claim was the ineffectiveness of trial counsel. In an earlier letter dated October 26, 2006, I made a point of advising Mr. Alston that I did not raise any claims of ineffectiveness of trial counsel in my brief because pursuant to Commonwealth versus Grant those claims should be raised in a PCRA proceeding; see attached letter. Contrary to Mr. Alston's allegation, I was not aware that he ever advised me that he wished to pursue all avenues of direct appeal, including a petition of allowance of appeal. His letters to me focused on the ineffectiveness of counsel issue. And in fact, in an earlier letter, he requested all discovery materials in my possession so that he could get to work on the PCRA claims. I included those discovery materials with my letter of August 1, 2008 enclosing the Superior Court's opinion. Finally, I emphatically deny any suggestion that I abandoned Mr. Alston following the decision of the Superior Court. I continued to communicate and consult with him following the filing of the brief to Superior Court, including forwarding to him discovery materials and voluminous notes of testimony from his trial which I copied at my own expense. If requested or if warranted in my judgment, I certainly would've filed a petition for allowance of appeal."

Q. Thank you. Now, do you recognize Commonwealth's Exhibit-3?

A. Yes.

Q. And what is it?

4

A. It's my letter enclosing the brief that was filed with Superior Court.
Q. And did you attach [the letters to the defendant and the Superior Court just described] to the letter that you wrote to the Supreme Court?
A. Yes.
Q. Counsel, did the defendant ever ask you to file a petition for allowance of appeal?
A. No.
Q. What is your standard practice when a defendant asks you to file a petition for allowance of appeal?
A. I would file a petition for allowance of appeal.
Q. Had defendant asked you to file a petition for allowance of appeal, would you have done it?
A. Yes.

Notes of Testimony, Hearing Volume 1, August 13, 2014, pp. 4-11. On cross examination the attorney denied receiving any response to his letter to, nor any letters or calls after sending it from, the defendant. *Id.* pp. 11-18. The defendant's testimony was a rambling insistence that he did not receive the letter the attorney described, calling it a fake, though he admitted to receiving the transcripts, and wrote many letters to the attorney asking him about pursuing his appeal; he claimed that he learned that he lost his appeal and that no *allocatur* petition was filed by "writing the dockets." *Id.* pp. 19-25. On cross, the Assistant District Attorney noted that he did not have copies of his letters, though he insisted that he sent some of them to the Supreme Court with his petition, and that, although the prison to which the letter was mailed did keep records of legal mailings being received for and being given to prisoners, and hence would also show that letters were not received, he did not bring copies of those records to the hearing either. *Id.* pp. 25-28.

Q. And in those letters, do you ask him to file a petition for allowance of appeal for you?
A. No. In these letters, it's just -- I have yet to receive any documents that you were going to send me that you said you would send me at your earliest convenience – I'm trying to see anything about the Supreme Court.
No, it don't got [*sic*] Supreme Court, but it say appellate proceedings. I didn't specifically say -- when I write, I just be writing about my appeal. I don't specifically say --
Q. So you never asked about the Supreme Court or requested anything about the Supreme Court?
A. Specifically, no.

5

*Id.* pp. 28-29. The court adjourned to allow defense counsel to get copies of whatever the defendant submitted with his petition to the Supreme Court.

The next day counsel advised the court that she asked the Supreme Court clerk for a copy of the letter which appeared on the docket as being the application for relief but was advised that there was no digitalized or computerized filings and that the Supreme Court did not have a file on the matter as they purged all their files "as late as 2009." Notes of Testimony, Hearing Volume 1, August 14, 2014, pp. 4-5. Counsel introduced copies of letters from the defendant to his appellate counsel but they all predated the Superior Court's affirmance of his judgment of sentence; she acknowledged that he could not produce a copy of his letter to the Supreme Court which, it was explained, was sent in response to his attorney's letter to it. *Id.* pp. 6-19. Those letters apparently explain the Court's order of May 8th marking the case closed, it having most likely decided that the defendant did not ask his attorney to seek *allocatur* and, therefore, the attorney had not abandoned him. After hearing argument, the court ruled that the defendant had not been abandoned by his attorney and there was, therefore, no basis for proceeding with the *allocatur* petition, in that the order was to proceed with that appeal only if the court found counsel had abandoned him. In view of the extenuating circumstances, the court also ruled that counsel would be permitted to file an additional amended petition to ensure the defendant's PCRA rights were protected, including therein whatever counsel thought was relevant from that proceeding and the previous petitions. *Id.* p. 32. On May 4, 2015, counsel filed a motion to withdraw asking the court to appoint new counsel for personal reasons. On June 3rd the court granted the motion and present counsel was subsequently appointed. He filed the amended petition which is subject in this appeal on August 29, 2016. The Commonwealth filed a Motion to Dismiss on October 3, 2017, the court issued a *Rule 907* notice of intent to dismiss for lack of merit on November 8th, formally dismissed the petition on January 10, 2018, and this appeal

6

followed on the 26th. In a *Pa.R.A.P. 1925(b)* statement of errors complained of on appeal, present counsel stated the issues in the same terms as presented in the amended petition.

## II.    PCRA PETITION

The claims were (1) that (a) the defendant's first trial counsel was ineffective for failing to notify him of his intention to withdraw and (b) his trial counsel had a conflict of interest and was ineffective for failing to (2) object to hearsay evidence, (3) investigate whether Charles Wesley had implicated him, (4) object to Detective Ronald Dove's "conflicting interest during trial" and to (5) file a motion that the verdict was against the weight of the evidence, and (6) newly discovered evidence of Detective Dove's having been fired and charges being brought against him.[4] Accompanying the amended petition was a twenty page document also titled an amended petition but is more like a memorandum of law. The court will refer to both as simply the petition. It consisted of a rendition of the Commonwealth's evidence and a repetition of the underlying claims, a summary of the law applicable to pleading and proving, and the criteria to be employed by the courts in evaluating and ruling on, PCRA claims, followed by what purported to be factual argument in support of the underlying claims. That factual support, however, consisted entirely of general allegations of what counsel should or should not have done followed by the bald assertions that those accusations alone where sufficient to meet the defendant's burden of pleading and proving entitlement to PCRA relief. Nowhere in the petition, with only three very minor and inconsequential exceptions, did counsel cite to any facts on or off the record to demonstrate that those actions or inactions were in any way inconsistent with reasonably competent legal representation, that counsel had no reasonable bases for them, or how the defendant was harmed by them. After summarizing the general law, the court will address each underlying claim in the order set forth above.

---

[4] The court has rearranged the claims as presented by counsel for simplicity of rendering and discussion.

## III. APPLICABLE LAW

We begin by noting our standard of review. We have said in a prior case:

> When examining a post-conviction court's denial of relief, our scope of review is limited to a determination of whether the court's findings are supported by the record and are otherwise free of legal error. The findings of the post-conviction court will not be disturbed unless they have no support in the record. Additionally we note that there is no absolute right to a hearing pursuant to the PCRA. Rather, the post-conviction court may elect to dismiss a petition if it has thoroughly reviewed the claims and determined that they are utterly without support in the record.

*Commonwealth v. Neal, 713 A.2d 657, 660 (Pa.Super.1998)* quoting *Commonwealth v. Schultz, 707 A.2d 513, 516 (Pa.Super.1997)* (internal citation omitted).

To be eligible for relief pursuant to the PCRA, an appellant must first establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in *42 Pa.C.S.A. § 9543(a)(2)*. An appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. *42 Pa.C.S.A. §§ 9543(a)(3)* and *9544*. Finally, the appellant must demonstrate that failure to litigate the issue prior to trial, during trial, or on direct appeal could not have resulted from any "rational, strategic or tactical decision by counsel." *42 Pa.C.S.A. § 9543(a)(4). Commonwealth v. Williams, 730 A.2d 507, 510 (Pa.Super.1999).*

\* \* \*

The standard for determining ineffective assistance of counsel is well settled. In order to succeed on an ineffectiveness of counsel claim, the petitioner is required to make the following showing: (1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999)*. We presume counsel is effective and place upon appellant the burden of proving otherwise. *Commonwealth v. Carpenter, 555 Pa. 434, 449, 725 A.2d 154, 161 (1999)* citing *Commonwealth v. Marshall, 534 Pa. 488, 633 A.2d 1100 (1993)*.

*Commonwealth v. Brown, 767 A.2d 576, 580, 581 (Pa.Super. 2001)*. "Our standard of review in an appeal from the grant or denial of PCRA relief requires us to determine whether the ruling of the PCRA court is supported by the record and is free from legal error." *Commonwealth v. Lesko, 609 Pa. 128, 15 A.3d 345, 358 (2011)*.

8

The remaining claims allege ineffective assistance of resentencing counsel. In order to obtain relief based on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)*. In Pennsylvania, we have applied the *Strickland* test by looking to three elements. Thus, in order to succeed on a claim of ineffectiveness, the petitioner must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975 (1987)*. Additionally, we note, the Sixth Amendment right to counsel is recognized "not for its own sake," but because of the effect it has on the accused's right to a fair trial. *See Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); see also Strickland, 466 U.S. at 689, 104 S.Ct. 2052* ("Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation.... The purpose is simply to ensure that criminal defendants receive a fair trial."). For these reasons, counsel is presumed to have rendered effective assistance. Both the U.S. Supreme Court and this Court have made clear that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Strickland, supra; Commonwealth v. Albrecht, 554 Pa. 31, 720 A.2d 693, 701 (1998)*.

\* \* \*

When evaluating ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential." *Strickland, 466 U.S. at 689, 104 S.Ct. 2052*. Indeed, few tenets are better settled than the presumption that counsel is effective. *Commonwealth v. Daniels, 600 Pa. 1, 963 A.2d 409, 427 (2009)*. This presumption arises from the recognition that it is all too easy for the defendant or the court to second-guess a strategy that has proven unsuccessful. Rather, a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland, 466 U.S. at 690, 104 S.Ct. 2052*. "Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Puksar, 597 Pa. 240, 951 A.2d 267, 277 (2008) (quoting Commonwealth v. Miller, 572 Pa. 623, 819 A.2d 504, 517 (2002))*. The U.S. Supreme Court explained a reviewing court's role in making this determination when it stated:

> [t]he court should keep in mind that counsel's function, as
> elaborated in prevailing professional norms, is to make the
> adversarial testing process work in a particular case. At the same
> time, the court should recognize that counsel is strongly presumed
> to have rendered adequate assistance and made all significant
> decisions in the exercise of reasonable professional judgment.

9

*Strickland, 466 U.S. at 690, 104 S.Ct. 2052.*

*Id. A.3d at 373-74, 380.* "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. [*Commonwealth v.*] *(Michael) Pierce,* [*567 Pa. 186,*] *786 A.2d* [*203 (2001)*] *at 221-22; see also Commonwealth v. Albrecht, 554 Pa. 31, 720 A.2d 693, 701 (1998)* ('If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met.')." *Commonwealth v. Fulton, 574 Pa. 282, 830 A.2d 567, 572 (2003).* As will be shown, counsel's submissions here did not come close to meeting any of the *Strickland/Pierce* standards, especially the third.

> We find that the language of the PCRA does not create a higher burden on a defendant to show ineffective assistance of counsel than the standard for proving ineffectiveness on direct appeal. Both the PCRA language and *Pierce* reflect two aspects of the same standard: *Strickland*'s test for determining when counsel's ineffectiveness prejudiced the defendant. *Pierce* and its progeny adopted the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" definition of prejudice and largely ignored other language in *Strickland* concerning the scope of the ineffectiveness inquiry as a determination of fundamental fairness and the reliability of the results of the proceeding. The PCRA definition, however, mirrors the reliability-of-the-result facet of *Strickland,* which *Pierce* and its progeny have de-emphasized in favor of the more easily apprehended "prejudice" test. *Strickland*'s admonition that "[i]n every case the court should be concerned with whether...the result of the particular proceeding is unreliable because of a breakdown in the adversarial process," *Strickland, 466 U.S. at 696, 104 S.Ct. 2052,* finds its echo in the following language from the PCRA:

>> (2) [t]hat the conviction or sentence resulted from one or more of the following:
>> ...
>> (ii) ineffective assistance of counsel which, in the circumstances of the particular case, *so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.*

*42 Pa.C.S. §9543* (emphasis added).

10

*Commonwealth v. Kimball, 555 Pa. 299, 724 A.2d 326, 332 (1999).*

In the case at bar Appellant has not been denied the right to appeal. Rather, counsel is merely faulted for forgoing some of the issues which the client wished to raise. In such a case, the relief available to an appellant for a claim that PCRA counsel's judgment was exercised in a legally ineffective manner is an evaluation of the claims prior counsel has forgone for a determination of ineffectiveness. *See Commonwealth v. Travaglia, 541 Pa. 108, 661 A.2d 352, 367-68 (Pa.1995).* Therefore, we will grant relief only if Appellant has shown that "counsel's conduct, by action or omission, was of questionable legal soundness; that the conduct complained of had no reasonable basis designed to effectuate the client's interest; and that counsel's conduct had an adverse effect on the outcome of the proceedings." *Commonwealth v. Clark, 551 Pa. 258, 710 A.2d 31, 35 (Pa.1998).* If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met. *Travaglia, supra,* at 357. With these standards in mind, we turn to consider the claims raised in this appeal which the court below did not address.

*Commonwealth v. Albrecht, 554 Pa. 31, 720 A.2d 693, 701 (1998) (footnotes omitted).*

Trial counsel's failure to gather and marshal said evidence on appellant's behalf could constitute ineffectiveness only if such evidence existed. A search of the record and briefs, however, does not reveal any facts which would suggest appellant's amenability to special treatment or rehabilitation programs. Appellant's current counsel offers nothing more than boilerplate allegations of amenability. Without more, we will not conclude that trial counsel was ineffective in failing to petition for appellant's transfer to juvenile court. Assertions of ineffectiveness in a vacuum cannot be ineffectiveness. Counsel who is alleging ineffectiveness must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective. This Court will no longer consider claims of ineffective assistance of counsel in the abstract. Boilerplate allegations of amenability are insufficient to warrant remand for an evidentiary hearing on appellant's suitability for treatment under the juvenile court system. Thus, this issue of ineffectiveness is without merit.

*Commonwealth v. Pettus, 492 Pa. 558, 424 A.2d 1332, 1335 (1981).*

As noted, although appellant occasionally makes reference to his counsel being ineffective with respect to his seven waived claims of record-based error, he does not actually develop any of those claims of ineffective assistance of counsel in any meaningful fashion. The closest appellant comes to crafting a discernible argument is in Argument I, where he asserts, in the concluding paragraph, that trial counsel was ineffective for failing to object to the trial court's *voir dire* questions concerning capital punishment which, he claims, led to the exclusion of jurors who were not " 'irrevocably committed' to vote against the death penalty." Appellant

11

"submits" that counsel did not have a reasonable strategic basis for failing to object, but then admits that the "record is silent" on the point and makes no proffer respecting counsel. Instead, he requests that we remand for an evidentiary hearing so that he may discover whether counsel in fact had a reasonable basis for failing to object.[8] Appellant does not address at all the *Strickland/Pierce* prejudice requirement. Claims of ineffective assistance of counsel are not self-proving; this undeveloped claim of ineffectiveness is insufficient to prove an entitlement to relief. Appellant's assertions of counsel's ineffectiveness with respect to other of his waived claims of record-based error, which are stated in even balder terms, fail for the same reason. *See Commonwealth v. Bond, 819 A.2d 33, ----, 2002 WL 1958492, at \*4 (Pa. Aug. 23, 2002)* (reaffirming that "boilerplate allegations of ineffectiveness of PCRA counsel ..., for failing to raise these claims below, ... fail because they are underdeveloped."); *Commonwealth v. Bracey, 568 Pa. 264, 795 A.2d 935, 940 n. 4 (2001)* ("Such an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief"); *Commonwealth v. Abdul Salaam, 808 A.2d 558, 560 n. 3, 2001 WL 34041795, at \*1 n. 3 (Pa. 2001)* (same); *(Michael) Pierce, 786 A.2d at 221* (appellant cannot prevail on claim of ineffective assistance of counsel when claim is not developed); *Commonwealth v. Pettus, 492 Pa. 558, 424 A.2d 1332, 1335 (1981)* (mere abstract or boilerplate allegations of ineffectiveness "cannot be ineffectiveness"). Thus, these versions of the claims fail.

> 8 With respect to appellant's request for an evidentiary hearing, we note that "[a]n evidentiary hearing ... is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." *Commonwealth v. Scott, 561 Pa. 617, 752 A.2d 871, 877 n. 8 (2000)*.

*Commonwealth v. Jones, 571 Pa. 112, 811 A.2d 994, 1003 (2002).* In those last two quotations the Court set forth the unmet burdens of pleading and proof most applicable to counsel's presentation of the underlying claims here.

**1. Prior Counsels' Failure to Notify of Withdrawal and Conflict of Interest**

The stated "factual" bases for these claims was that the defendant's first trial counsel withdrew because of a fee dispute and the court appointed a member of that attorney's firm to represent him. Counsel claimed that the second attorney was, therefore, unprepared to properly defend the defendant or, if he was, the fee dispute with his law firm rendered him disloyal to the defendant's interest. Counsel simply conjured up these spurious allegations without citing to any

12

real facts whatsoever to demonstrate that any of that occurred. He did not note when the attorney withdrew or the second attorney appointed or how much time appointed counsel had to prepare before the defendant went to trial. Nor did counsel cite any actions the attorney took or failed to take as a result of his alleged unpreparedness.

### (a) Failure to Notify Defendant of Counsel's Intention to Withdraw

Counsel asserted that the defendant's first attorney failed to notify him of his intention to withdraw which deprived the defendant of the opportunity "to voice protest regarding the lack of communication between him and counsel." Counsel did not mention what the defendant would have said in protest, or what was the nature of the fee dispute, nor describe what communications the defendant wanted to assert or receive. Without being presented with any evidence to the contrary, it can be assumed that the first attorney filed a motion to withdraw for the usual reason, the defendant could no longer afford him, of which the defendant was surely notified and given the opportunity to be heard, and that the court gave the matter all due consideration. If the attorney had not attested to the fact that the defendant was notified and had not received any indication from him that he wished to contest the motion, the court would have seen to it that he was and given that opportunity if he so desired. The fact that the second attorney was with the first's law firm most likely enhanced his ability to prepare for trial having been able to readily receive a full briefing if he had not become familiar with the case before he was appointed, and have the ready ability to consult with him as things developed. The judge who assigned the attorney, as this judge certainly would, probably considered their mutual employment a plus for the defendant. Without any evidence to the contrary, the PCRA court employed the assumption of counsel's competent effectiveness and deemed it very likely that the attorneys consulted with one another and that if the new attorney felt he needed more time to prepare he would have asked for more time and the court would have readily granted it. "[M]ere abstract or boilerplate

13

allegations of ineffectiveness 'cannot be ineffectiveness.'" *Jones, supra,* quoting *Pettus, supra.*

### (b) Counsel's Conflict of Interest

Counsel's argument here was that, because of the (undefined) fee dispute with the defendant's privately retained counsel, assigned counsel must have let his loyalty to his firm outweigh his duty to defend his client. That is simply a bald-faced fabrication. There is absolutely nothing on the record to support that untoward assumption, and counsel pointed to nothing off the record to even remotely suggest it. The fact that one lawyer was allowed to withdraw, probably because the defendant was unable to pay a retainer, would have no effect on a second lawyer's ability to do his job properly while being paid by the state, even if that attorney were a member of the first attorney's law firm. Counsel's tacit assumptions are that the defendant must have owed the attorneys' firm money and that the second lawyer must, therefore, have given his case little thought, whereas common knowledge dictates that privately retained criminal lawyers demand retainers in advance in order to be sure they get paid by clients who are dissatisfied with the results of their cases. Counsel cited two cases to support his theory, the first for the proposition that "the Supreme Court could not be certain whether the defense attorney was influenced in his basic strategic decisions by the interests of the employer who hired him", and the other for the proposition that "In this vein, courts sometimes assess adverse effect by questioning whether the record shows that counsel 'pulled his punches,' *i.e.,* failed to represent the defendant as vigorously as he might have done had there been no conflict." Counsel made no attempt to compare the facts in those cases to those here, simply implying that they were akin by quoting the courts out of context and employing innuendo. Those cases dealt with facts not even remotely similar to those here. The holdings in those cases must be thoroughly reviewed in order to fully demonstrate how remotely the principles counsel cited from them apply to the meager facts and bald conclusions he cited in this case.

14

The first case concerned the revocation of probation of former employees of an adult theatre and bookstore, who had been convicted for distributing obscene materials, when they failed to make installment payments on their fines as required as a condition for probation. The Supreme Court held that the judgment was to be vacated and the case remanded with instructions for determination of whether there existed a conflict of interest of employees' counsel, who also represented the employer, such as to constitute a violation of employees' due process rights.

> Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest. Another kind of risk is present where, as here, the party paying the fees may have had a long-range interest in establishing a legal precedent and could do so only if the interests of the defendants themselves were sacrificed. As suggested above, the factual setting of this case requires the Court to take note of the potential unfairness resulting from this particular third-party fee arrangement. Petitioners were mere employees, performing the most routine duties, yet they received heavy fines on the apparent assumption that their employer would pay them. They now face prison terms solely because of the employer's failure to pay the fines [as he had in a number of previous cases], having been represented throughout by a lawyer hired by that employer. The potential for injustice in this situation is sufficiently serious to require us to consider whether petitioners have been deprived of federal rights under the Due Process Clause of the Fourteenth Amendment.
>
> * * *
>
> Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. *E.g., Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Holloway v. Arkansas, 435 U.S. 475, 481, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978).* Here, petitioners were represented by their employer's lawyer, who may not have pursued their interests single-mindedly. It was his duty originally at sentencing and later at the revocation hearing, to seek to convince the court to be lenient. On the record before us, we cannot be sure whether counsel was influenced in his basic strategic decisions by the interests of the employer who hired him. If this was the case, the due process rights of petitioners were not respected at the revocation hearing, or at earlier stages of the proceedings below.
>
> It is, however, difficult for this Court to determine whether an actual conflict of interest was present, especially without the benefit of briefing and argument on this issue. Nevertheless, the record does demonstrate that the *possibility* of a conflict of interest was sufficiently apparent at the time of the revocation hearing

15

to impose upon the court a duty to inquire further. The facts outlined above were all made known at that time. The court must have known that it had imposed disproportionately large fines—penalties that almost certainly were increased because of an assumption that the employer would pay the fines. The court did know that petitioners' counsel had been provided by that employer and was pressing a constitutional attack rather than making the arguments for leniency that might well have resulted in substantial reductions in, or deferrals of, the fines. These facts demonstrate convincingly the duty of the court to recognize the possibility of a disqualifying conflict of interest. Any doubt as to whether the court should have been aware of the problem is dispelled by the fact that the State raised the conflict problem explicitly and requested that the court look into it.

*Wood v. Georgia, 450 U.S. 261, 271–73, 101 S.Ct. 1097, 1103–04, 67 L.Ed.2d 220 (1981)*

(footnotes omitted). Counsel here pointed to no facts indicating that trial counsel devoted his attention to his law firm more then to his client. Cases where actual conflicts were apparent from the record are legion and were thoroughly discussed in the other case counsel cited, but none of them dealt with situations even remotely like the one here.

> The primary difficulty with Appellant's conflict-of-interest-based *per-se* prejudice claim is that the conflict-of-interest framework, as it has been developed for purposes of [*United States v.*] *Cronic*[, *466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984),*]-style presumed prejudice in the *Holloway* [*v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)*]/[*Cuyler v.*] *Sullivan*[, *446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)*] line of cases, pertains only to dual representation, that is, representation of more than one client, where the clients have diverging interests. *See, e.g., Commonwealth v. Tedford, 598 Pa. 639, 728, 960 A.2d 1, 54 (2008)* ("An actual conflict of interest is evidenced whenever during the course of representation, the interests of appellant—and the interests of another client towards whom counsel bears obligations—diverge with respect to a material factual or legal issue or to a course of action." (internal quotation marks omitted)). The Supreme Court has characterized these situations as subsuming an "active representation" of conflicting interests, *see, e.g., Mickens* [*v. Taylor,*] *535 U.S.* [*162*] *at 166, 122 S.Ct.* [*1237*] *at 1241* [*152 L.Ed.2d 291 (2002)*] (reciting that the Court has foregone inquiry into actual prejudice where "the defendant's attorney actively represented conflicting interests"), which it has recognized as being inherently suspect. *See id.* at *168, 122 S.Ct. at 1241* (quoting *Holloway, 435 U.S. at 489–90, 98 S.Ct. at 1181*). In this respect, *i.e.,* in focusing on the "active" nature of the conflict, the Court's concern centers primarily on the potential for an attorney to alter his trial strategy due to extrinsic considerations stemming from other loyalties, thereby distorting counsel's strategic or tactical decisions in a manner that would not occur if counsel's sole loyalty were to the defendant. *See, e.g., Wood v. Georgia, 450 U.S. 261, 272, 101 S.Ct. 1097, 1103–04, 67 L.Ed.2d 220 (1981)* (remanding for a determination of adverse effect where the Supreme

16

Court could not be certain whether the defense attorney was "influenced in his basic strategic decisions by the interests of the employer who hired him"). In this vein, courts sometimes assess adverse effect by questioning whether the record shows that counsel "pulled his punches," *i.e.*, failed to represent the defendant as vigorously as he might have done had there been no conflict. *See, e.g., United States v. Nicholson, 475 F.3d 241, 251 (4th Cir.2007); United States v. Martinez, 630 F.2d 361, 362–63 (5th Cir.1980); People v. Clark, 52 Cal.4th 856, 131 Cal.Rptr.3d 225, 261 P.3d 243, 344 (2011); Beard v. Commonwealth, 302 S.W.3d 643, 647 (Ky.2010); Davis v. State, 897 So.2d 960, 970 (Miss.2004).* Here, however, Appellant is arguing for assumed prejudice on the theory that Weiss's representation of Appellant conflicted with her own interest in obtaining monetary compensation from work she could otherwise have performed for other clients. Appellant has thus shifted the focus to the attorney's private interests as the basis for the conflict—and hence, presumed prejudice—as opposed to centering her contention on the difficulties that arise when an attorney attempts to represent multiple parties with diverging interests.

We do not foreclose the possibility that a conflict of interest may arise apart from dual representation—such as where an attorney is somehow beholden to the interests of another, antagonistic party without actually functioning as that party's attorney. *Cf. Goforth v. Commonwealth, 2009 WL 1110400, *8 (Ky. April 23, 2009)* (considering, albeit ultimately rejecting, a defendant's allegation of a conflict of interest where his attorney was paid by the same entity that provided counsel for his co-defendant). Nor do we deny that an attorney's financial interests can conflict with those of his client under some circumstances, *see, e.g., In re Vioxx Prods. Liab. Litig., 650 F.Supp.2d 549, 560 (E.D.La.2009)* (positing that, in a civil lawsuit where the amount of a contingency fee is at issue, a conflict may exist between the claimant and his attorney who both seek to maximize their own percentage of an award), or that a conflict with the attorney's private interests may adversely affect the attorney's representation of his client, such as where defense counsel is himself under criminal investigation. *See Thompkins v. Cohen, 965 F.2d 330, 332 (7th Cir.1992)* (noting that a conflict may arise in such a circumstance since counsel may fear that an acquittal will anger the district attorney's office, which might then retaliate); *see also United States v. Fulton, 5 F.3d 605, 610 (2d Cir.1993)* (finding a conflict of interest where a government witness alleged that counsel engaged in criminal conduct related to the charges for which the defendant was on trial); *United States v. Ellison, 798 F.2d 1102, 1106–08 (7th Cir.1986)* (finding a conflict where pursuit of the client's interests would lead to evidence of counsel's malpractice). Thus, we credit Appellant's argument to the degree it proposes that it is possible for an underpaid attorney's financial interest in undertaking other, more remunerative work, to impinge on his or her full devotion to the interests of the client at issue—at least in the sense that the attorney may be incentivized to spend less time and fewer resources representing that client as a result of such extrinsic financial pressures. *See generally Fulton, 5 F.3d at 609* ("A situation in which the attorney's own interests diverge from those of the client presents the same core problem presented in the multiple representation cases: the attorney's fealty to the client is compromised.").

In spite of the above, we remain doubtful that the asserted conflict here can reasonably fit within the contours of the conflict-of-interest framework for Sixth–Amendment presumptive prejudice, at least as the Supreme Court has developed that doctrine, as it is of a different nature qualitatively from the other conflicts that the Court has recognized. In this regard, we are guided by the Supreme Court's own analysis of its *Holloway/Sullivan* line, in which it has criticized a tendency among the lower federal courts to apply *Sullivan* "unblinkingly to all kinds of alleged attorney ethical conflicts." *Mickens, 535 U.S. at 174, 122 S.Ct. at 1245* (internal quotation marks and citation omitted). Even more pointedly, the *Mickens* Court explained that such tribunals

> have invoked the *Sullivan* standard not only when (as here) there is a conflict rooted in counsel's obligations to former clients, but *even when representation of the defendant somehow implicates counsel's personal or financial interests*, including a book deal, a job with the prosecutor's office, the teaching of classes to Internal Revenue Service agents, a romantic "entanglement" with the prosecutor, or fear of antagonizing the trial judge.

> It must be said, however, that the language of *Sullivan* itself does not clearly establish, or indeed even support, such expansive application. "[U]ntil," it said, "a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."

*Id. at 174–75, 122 S.Ct. at 1245* (quoting *Sullivan, 446 U.S. at 350, 100 S.Ct. at 1719*) (emphasis altered; citations omitted). Thus, because *Mickens* expressly disapproved extending the *Holloway/Sullivan* conflict analysis to a broad category that it couched in terms of "counsel's personal or financial interests," we are not at liberty, absent further material guidance from that Court, to apply *Sullivan* so as to find structural error grounded on the fee ceiling imposed by the county court in the present case. Accordingly, Appellant cannot prevail on her claim that she was constructively denied counsel due to the asserted conflict grounded on Weiss's financial interest in working on cases for more remunerative clients during the relevant time period.

*Commonwealth v. King, 618 Pa. 405, 57 A.3d 607, 619–21 (2012)* (footnote omitted). Not only did counsel here fail to point to any factual evidence of a conflict resembling those described in those two cases and those cited therein, he didn't point to any such facts at all. Nor did he even try to demonstrate how the alleged conflict affected his trial attorney's representation. Like King, he expected the court to assume that there was and that it did based simply upon the facts that private counsel withdrew and appointed counsel worked for his law firm.

18

Appellant next claims that direct appeal counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to disclose to appellant an "actual conflict" of interest that compromised counsel's ability to zealously represent appellant. Appellant alleges that while trial counsel, Louis Savino, Esquire, represented him in the instant case, Attorney Savino was also representing Aaron Montague (a.k.a. "Little Man"), whose car victim Andre Graves allegedly stole shortly before he was murdered, at least according to a police statement provided by Graves' friend, Charles Brown. According to appellant, Brown's statement "put [Savino] on notice that Little Man ... had a clear motive for murdering Mr. Graves." Appellant further alleges that, due to this supposed "actual conflict" of interest, Savino never introduced evidence at appellant's trial that Graves stole Montague's car, contending that such evidence would have established a motive by another person for Graves' murder. In addition, appellant argues that "[t]he PCRA court's ruling on this issue should be reversed because it applied the wrong standard in assessing trial counsel's conflict."

\* \* \*

An appellant cannot prevail on a preserved conflict of interest claim absent a showing of actual prejudice. *Commonwealth v. Karenbauer, 552 Pa. 420, 715 A.2d 1086, 1094 (1998).* Nevertheless, we presume prejudice when the appellant shows that trial counsel was burdened by an "actual"—rather than mere "potential"—conflict of interest. *Commonwealth v. (Thomas) Hawkins, 567 Pa. 310, 787 A.2d 292, 297 (2001).* To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel "actively represented conflicting interests"; and (2) those conflicting interests "adversely affected his lawyer's performance." *Id. at 297–98* (quoting *Commonwealth v. Buehl, 510 Pa. 363, 508 A.2d 1167, 1175 (1986)* (quoting *Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)* and holding that "[a]ppellant's defense was not prejudiced by the fact that, at a prior time, his counsel had represented a Commonwealth witness")). Clients' interests actually conflict when "during the course of representation" they "diverge with respect to a material factual or legal issue or to a course of action." *Commonwealth v. Padden, 783 A.2d 299, 310 (Pa.Super.2001); Commonwealth v. Toro, 432 Pa.Super. 383, 638 A.2d 991, 996 (1994); In Interest of Saladin, 359 Pa.Super. 326, 518 A.2d 1258, 1261 (1986).*

\* \* \*

... Accordingly, the PCRA court did not err in determining that appellant had failed to show an actual conflict of interest and that, therefore, there was no basis upon which to presume that prejudice actually resulted to appellant from Savino's prior representation of Montague. Because appellant's underlying claim of trial counsel ineffectiveness lacks arguable merit, his claim that direct appeal counsel was ineffective for failing to raise the conflict-of-interest claim necessarily fails.

*Commonwealth v. Collins, 598 Pa. 397, 957 A.2d 237, 250, 251, 252 (2008)* (citations to record omitted). Other than the other ineffectiveness claims, which will be shown to be equally meritless, counsel did not point to anything demonstrating trial counsel was lax in his defense.

19

> We turn now to appellant's claim that trial counsel was ineffective because of a potential conflict of interest. This claim is totally without merit. Trial counsel fully disclosed the situation to the appellant as well as to the trial court and the prosecuting attorney prior to participating in appellant's defense. Appellant raised no objection at the time and, even now, does not point to any specific harm he suffered as a result of the alleged conflict of interest. Therefore, he has failed to adequately raise an ineffectiveness claim. *See Commonwealth v. Wallace, 495 Pa. 295, 433 A.2d 856 (1981).* This case need not be remanded for an evidentiary hearing for appellant has failed to allege a claim which would be of arguable merit. *See Commonwealth v. Smith, 321 Pa.Super. 170, 467 A.2d 1307 (1983).*

*Commonwealth v. Craig, 345 Pa. Super. 542, 498 A.2d 957, 961 (1985)* (Craig had argued that he should have been provided private defense counsel because a secretary in the defender's office where his trial counsel worked was the estranged wife of the prosecuting police officer).

This court was fully justified in rejecting these claims out of hand. Counsel's sole argument is that trial counsel must have been unprepared because he was appointed. He does not mention when he was appointed and it's not the court's obligation to look it up for him; it's the burden of a PCRA petition to create and/or cite to a detailed record for the court. Nor did counsel cite to a single fact that would indicate that counsel's alleged unpreparedness caused him to do something harmful, or fail to do something essential, to the defense.

> ... To reiterate, the claim is that appellate counsel was ineffective for failing to challenge trial counsel's lack of preparedness for trial, including his failure to meet personally with Elliott. *See* PCRA Court Opinion ... (characterizing Elliott's claim as encompassing the "failure to prepare for trial and failure to interview Elliot prior to trial"). As noted, in addition to demonstrating the arguable merit and lack of reasonable basis prongs of the *Pierce* ineffectiveness test, the governing standard requires a defendant to establish that he was prejudiced by trial counsel's failure to meet with him in order to prepare adequately for trial. This can be demonstrated by alleging beneficial information or issues that counsel should have presented had he been prepared adequately, which would have changed the outcome of the trial. *Porter, 728 A.2d at 896* (citing *Commonwealth v. Travaglia, 541 Pa. 108, 661 A.2d 352, 357 (1995)* (requiring a defendant to demonstrate prejudice in an ineffectiveness claim by demonstrating that "but for the act or omission in question, the outcome of the proceedings would have been different," and noting that a claim of ineffectiveness could be denied if the petitioner fails to satisfy any one of the three *Pierce* prongs)).

*Commonwealth v. Elliott, 622 Pa. 236, 80 A.3d 415, 432 (2013), cert. denied, Elliott v.*

20

*Pennsylvania, 135 S.Ct. 50, 190 L.Ed.2d 54 (2014).* "... *Commonwealth v. Porter, 556 Pa. 301, 728 A.2d 890, 896 (1999)* (holding that to establish ineffectiveness on the basis of alleged inadequate pretrial consultation, the defendant must establish that counsel inexcusably failed to raise issues that, had they been proffered, would have entitled him to relief) ..." *Id. at 431.*

### 2. Failure to Object to Hearsay Evidence

Counsel claimed that the testimony of the witness, Sharee Norton, that she heard one of the defendant's say "there's Charles" and Wesley say "Oh shit, that's them, get out of here" and that she talked to Wesley the day before she testified, told him she was scared to testify and that she was aware that Wesley did not cooperate with the police and was unwilling to testify, was inadmissible hearsay. His entire "factual" basis for this claim was "Counsel's failure to object to the above implication based on inadmissible hearsay resulted in a confrontation clause violation, as Wesley was not available to attest to whom he had allegedly referred to that day, overall violating the Petitioner's Sixth and Fourteenth amendment rights." He cited in support a ruling that "There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic, 466 U.S. 648, 658–59, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984)* (footnote omitted). Aside from the fact that *Cronic* had nothing to do with a trial attorney's failure to object or hearsay, counsel failed to explain why that testimony was hearsay, to what "implication" the testimony gave rise, with what the defendant would have confronted Wesley, or how any of that would have altered the outcome of his case. "It is well-established that counsel cannot be ineffective for failing to make baseless or fruitless objections." *Commonwealth. v. Webb, 491 Pa. 329, 421 A.2d 161, 165 (1980).* In making the above cited statement, the *Cronic* Court was referring to a defense counsel's virtual inability to render any legal assistance whatsoever.

21

Respondent and two associates were indicted on mail fraud charges involving the transfer of over $9,400,000 in checks between banks in Tampa, Fla., and Norman, Okla., during a 4–month period in 1975. Shortly before the scheduled trial date, respondent's retained counsel withdrew. The court appointed a young lawyer with a real estate practice to represent respondent, but allowed him only 25 days for pretrial preparation, even though it had taken the Government over four and one-half years to investigate the case and it had reviewed thousands of documents during that investigation. The two codefendants agreed to testify for the Government; respondent was convicted on 11 of the 13 counts in the indictment and received a 25–year sentence.

\* \* \*

While the Court of Appeals purported to apply a standard of reasonable competence, it did not indicate that there had been an actual breakdown of the adversarial process during the trial of this case. Instead it concluded that the circumstances surrounding the representation of respondent mandated an inference that counsel was unable to discharge his duties.

In our evaluation of that conclusion, we begin by recognizing that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated. See *United States v. Valenzuela–Bernal, 458 U.S. 858, 867–869, 102 S.Ct. 3440, 3446–3447, 73 L.Ed.2d 1193 (1982); United States v. Morrison, 449 U.S., at 364–365, 101 S.Ct., at 667–668; Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).* Moreover, because we presume that the lawyer is competent to provide the guiding hand that the defendant needs, see *Michel v. Louisiana, 350 U.S. 91, 100–101, 76 S.Ct. 158, 163–164, 100 L.Ed. 83 (1955),* the burden rests on the accused to demonstrate a constitutional violation. There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.

Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No specific showing of prejudice was required in *Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974),* because the petitioner had been "denied the right of effective cross-examination" which " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' " *Id., at 318, 94 S.Ct., at 1111* (citing *Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968),* and *Brookhart v. Janis, 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966)).*

Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that

22

any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. *Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)*, was such a case.

*Cronic, supra, U.S. at 649-50, 657–60, S. Ct. at 2041, 2046-47* (footnotes omitted). To compare Norton's innocuous testimony to the "actual breakdown of the adversarial process" that occurred in *Cronic* is the height of disingenuousness. "The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id. n. 25.* "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id. n. 26.* Counsel did not explain how the admission of those little bits of information could possibly have prejudiced the defendant's case, nor why they were inadmissible, which they certainly were not.

> Appellant's next challenge is to the introduction of the unknown female's statement, "He's bagging it up. He will be out." ...

> Simply put, only slight evidence of the conspiracy is needed for a coconspirator's statement to be introduced and the order of proof is discretionary. A co-conspirator's statement is only inadmissible where it is the sole evidence of the conspiracy. That is simply not the case herein. Although the co-conspirator's statement was essential to establishing the conspiracy beyond a reasonable doubt, it was not the exclusive evidence that a conspiracy existed. Before Appellant exited his residence to deliver the drugs, Jane Doe exited the same residence and approached the officer. Appellant, in accordance with Jane Doe's statement, followed soon thereafter. As soon as Appellant completed his delivery of the drugs, he rendezvoused with Jane Doe and reentered the premises that they both had exited before the drug delivery. The surrounding actions of Appellant and Jane Doe immediately before and after the drug transaction is some evidence of a conspiracy. Thus, the Commonwealth demonstrated by a preponderance of the evidence that a conspiracy existed. Hence, the statements were admissible pursuant to the co-conspirator exception to the hearsay rule. *Commonwealth v. Johnson, 576 Pa. 23, 838 A.2d 663 (2003); Pa.R.E. 803(25)(E)*.[1]

> 1 The then applicable version of *Pa.R.E. 803(25)(E)* read:

23

> The following statements, as hereinafter defined,
> are not excluded by the hearsay rule, even though
> the declarant is available as a witness:
> ....
> "(25) Admission by party-opponent. The statement
> is offered against a party and is....
> (E) a statement by a co-conspirator of a party during
> the course and in furtherance of the conspiracy. The
> contents of the statement may be considered but are
> not alone sufficient to establish .... the existence of
> the conspiracy and the participation therein of the
> declarant and the party against whom the statement
> is offered under subdivision (E)."

*Commonwealth v. Feliciano, 2013 PA Super 117, 67 A.3d 19, 26, 27 (2013), appeal denied, 622 Pa. 765, 81 A.3d 75 (2013).* Counsel's assertion that, had this testimony been excluded, the defendant would not have been convicted, without even mentioning the overwhelming evidence by which he was actually convicted, is simply inane. "Had this testimony been properly excluded, the jury would still have had sufficient evidence to convict appellant of the various crimes charged." *Commonwealth v. Mescall, 405 Pa. Super. 326, 592 A.2d 687, 690 (1991), appeal denied, 529 Pa. 656, 604 A.2d 248 (1992)* (Complainant's testimony that she asked a friend of the defendant's to ask him to at least let her have her clothes and, when she did so he responded "I hate all women", although double hearsay, could not have inflamed the jury because it acquitted him of simple assault and the failure to object was not ineffective assistance). In addition to *Cronic*, counsel cited one other case in which the court held that defense counsel was ineffective in failing to use the victim's inconsistent identification testimony from the alleged accomplice's previous trial, in opening the door to the admission of testimony concerning a bank robbery homicide investigation of codefendant, and in failing to investigate and call certain defense witnesses. *Berryman v. Morton, 100 F.3d 1089 (3d Cir. 1996).* His comparison of those failings to trial counsel's failure to object to Norton's testimony, by describing the latter as "No trial strategy can attach to a decision not to object to inadmissible

24

hearsay when the record shows that the outcome of the proceedings would have changed, especially when Petitioner is being denied his right to compulsory process, to confront his accusers, constructive denial of counsel, due process of law, and a fair and impartial trial", is, to say the least, an exercise in wild unsupported posturing.

### 3. Failure to Investigate Wesley's Implication of Defendant

Here counsel claimed that while the defendant and Wesley were in federal custody together Wesley told him that he would testify that he was not one of the people who tried to shoot him and that he told his retained counsel about it but that attorney never told appointed counsel about it and the defendant was only able to mention it to him on the day of the trial. Counsel did not deign to seek prior counsels' input into this allegation. Having not cited to any evidence of any of that having actually occurred, the court could only assume that the only source for that information was the defendant himself and it could thus lend it all the credence it deserved: none whatsoever. A PCRA court cannot grant relief based upon a defendant's mere unsupported assertions that he told his counsel relevant facts and counsel failed to act on them. If that were adequate proof, every convicted criminal would be granted a new trial..

As our Supreme Court has also stated:

> To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the [appellant] must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

*Commonwealth v. Fletcher, 561 Pa. 266, 292, 750 A.2d 261, 275 (2000)*. Thus, trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the witness's testimony would have been helpful to the defense. *Commonwealth v. Auker, 545 Pa. 521, 548, 681 A.2d 1305, 1319 (1996)*. "A failure to call a witness is not per se ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Id.*

* * *

25

(D) EVIDENTIARY HEARING.-

(1) Where a petitioner requests an evidentiary hearing, the petition shall include a signed **certification** as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

*42 Pa.C.S.A. § 9545(d)(1)* (emphasis supplied).

\* \* \*

Likewise, Appellant did not offer any evidence whatsoever to prove the existence of Ms. Markhee or the substance of what Ms. Markhee could possibly have testified to at trial, nor did he establish that Ms Markhee was known or should have been known to trial counsel or that she was willing and available to testify at trial on behalf of Appellant. He therefore cannot establish that trial counsel was ineffective for failing to locate and call her as a witness at trial. *Fletcher, supra; See also Commonwealth v. Lopez, 559 Pa. 131, 150, 739 A.2d 485, 496 (1999), cert. denied, 530 U.S. 1206, 120 S.Ct. 2203, 147 L.Ed.2d 237 (2000)* (trial counsel will not be deemed ineffective for failing to call two witnesses which appellant specifically named in his PCRA Petition, since appellant did not provide any objective proof that the witnesses actually existed or were willing to testify on his behalf); *Commonwealth v. Jones, 438 Pa.Super. 306, 652 A.2d 386 (1995), appeal denied, 541 Pa. 635, 663 A.2d 688 (1995)* (where trial counsel is alleged to have been ineffective for failing to call witnesses but there is no positive evidence that witness would have provided testimony helpful to the defense there is no evidentiary basis for grant of new trial).

*Commonwealth v. Brown, 767 A.2d 576, 581-82, 584 (Pa.Super. 2001).* "Where a defendant claims that counsel was ineffective for failing to call a particular witness, we require proof of that witness's availability to testify, as well an adequate assertion that the substance of the purported testimony would make a difference in the case." *Commonwealth v. Clark, 599 Pa. 204, 961 A.2d 80, 90 (2008)* (uncalled witness's alleged testimony did not contradict state's witness's testimony), *cert. denied, Clark v. Pennsylvania, 558 U.S. 1082, 130 S.Ct. 810, 175 L.Ed.2d 569 (2009).* "As noted by the Commonwealth, Appellant failed to demonstrate that her daughter was willing and able to testify at Appellant's trial. Thus, the claim fails for lack of arguable merit." *Commonwealth v. Tharp, 627 Pa. 673, 101 A.3d 736, 758 (2014).* It is

26

inexplicable how counsel can seriously proffer this claim when his own stated basis for claim number two above was that the witness's testimony about Wesley's not being willing to testify at trial somehow prejudiced him. "Because we conclude that Appellant has not established prejudice arising out of the absence of the witnesses' testimony or that such evidence would have been beneficial to his defense, even if believed, we find no error in the PCRA court's decision to dismiss this claim." *Commonwealth v. Gibson, 597 Pa. 402, 951 A.2d 1110, 1134 (2008)*. Without the required certification, or any independent evidence whatsoever that Wesley actually told the defendant that he would be willing to testify, the defendant has failed to demonstrate that (1) the purported witness would have actually testified to what the defendant claims he would, *i.e.*, that the witness actually existed, (2) the witness would have been available, (3) either counsel was informed of the existence of the witness or should have known of the witness's existence, (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced him. The defendant's unsupported allegation cannot meet any of those criteria, particularly since he did not bring up this little piece of information when he had the opportunity to do so at the hearing to determine whether his appellate counsel deserted him while that attorney was on the witness stand.

## 4. Failure to Object to Detective Dove's Conflicting Interest

Counsel claimed that trial counsel should have objected to Officer Dove's testimony because he had a conflict of interest in that he both "functioned as an investigator of the ... crime" and was one of the officers who was caught in the line of fire at the time of the shooting. This claim is patently absurd. Counsel cited no precedent for this unusual theory because there is none. Nor did counsel explain how those facts could have possibly burdened the officer with a conflict of interest or how they adversely affected the defendant. Every one of the police who were caught in the line of fire also participated in the investigation of it and testified at trial.

27

There have been untold numbers of times when police officers are directly involved in some aspects of a crime, as when a suspected perpetrator resists arrest for one example, participate in the investigation of both the original crime and the ensuing one and testify for the prosecution at trial. "We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Paddy, 609 Pa. 272, 15 A.3d 431, 443 (2011)* ("Merely stating that a family in the neighborhood was concerned because Ms. Whaley was talking to the police does not constitute evidence that some (unnamed) individual in that family murdered her." *Id. at 445.*) Counsel went on to simply state that "Counsel's failure to object and demonstrates [*sic*] the inattentiveness necessary to show that this was not a reasonable strategy [and a failure to] recognize that an error had occurred and required correcting [which was] not a strategy designed to effectuate the best interests of the child [*sic*]."

> In accord with these well-established criteria for review, a petitioner must set forth and individually discuss substantively each prong of the *Pierce* test. *Commonwealth v. James Jones, 583 Pa. 130, 876 A.2d 380, 386 (2005); Commonwealth v. (Aaron) Jones, 571 Pa. 112, 811 A.2d 994, 1003 (2002); Commonwealth v. Wharton, 571 Pa. 85, 811 A.2d 978, 988 (2002)* ( "Claims of ineffective assistance of counsel are not self-proving...."); *(Michael) Pierce, 786 A.2d at 221* (noting that an appellant cannot prevail on claim of ineffective assistance of counsel when claim is not developed); *(Charles) Pierce, 515 Pa. 153, 527 A.2d 973.* In multiple claims in this case, Appellant only addresses the first prong, arguing that the underlying claim has arguable merit, followed by a bald assertion of the lack of a reasonable basis and the fact of prejudice.[10] Such undeveloped claims, based on boilerplate allegations, cannot satisfy Appellant's burden of establishing ineffectiveness. *See Jones, 876 A.2d at 386; Commonwealth v. Bracey, 568 Pa. 264, 795 A.2d 935, 940 n. 4 (2001)* ("[s]uch an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief."). Thus, where Appellant has failed to set forth all three prongs of the ineffectiveness test and meaningfully discuss them, he is not entitled to relief, and we are constrained to find such claims waived for lack of development. As referenced above and discussed *infra*, many of the claims asserted by Appellant fail on this basis.[11]
>
> 10 Although the merits analysis encompasses the argument that would

be made if this were a direct appeal, the petitioner must nevertheless set forth herein the two other prongs of ineffectiveness, because Sixth Amendment ineffectiveness claims are distinct from merits review. *Commonwealth v. Collins, 585 Pa. 45, 888 A.2d 564 (2005).*

11 ... Therefore, where Appellant failed to do more than assert that his claim has arguable merit, counsel lacked a reasonable basis for their acts or omissions, and he was prejudiced by counsel's conduct, the presumption that counsel were effective prevails. Appellant does not meet his burden before this Court with regard to presenting claims of ineffectiveness by simply citing to *Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674*, emphasizing his perceived difficulty with this Court's jurisprudence, and asserting that he meets the three prongs of counsel ineffectiveness.

*Commonwealth v. Steele, 599 Pa. 341, 961 A.2d 786, 797-98 (2008).* Here, counsel's bald conclusions that the detective's alleged, but actually nonexistent, conflict of interest somehow disqualified him from testifying and prejudiced him were even less developed than Steele's. "Counsel's failure to object prejudiced Petitioner by allowing the jury to weigh evidence that the Petitioner was one of the shooters who had inadvertently fired at innocent bystanders, including Detective Dove [and allowed the jury] to consider this accusation made through Dove that supported the Commonwealth's theory." That is tantamount to claiming unfair prejudice because the Commonwealth was allowed to introduce evidence against the defendant in order to prove its case. If that were the standard for demonstrating ineffective assistance of counsel, no one would be in jail today.

The PCRA recognizes ineffectiveness claims as distinct claims-not labeling mechanisms to evade the effect of waiver of the underlying claims. Claims of ineffectiveness are subject to specific pleading and proof requirements under the PCRA. Mere boilerplate assertions, such as those made here, are inadequate to prove the effective denial of the right to counsel necessary to warrant PCRA relief.

Furthermore, the PCRA provisions regarding ineffectiveness require no more than what a constitutional ineffectiveness analysis has always required, regardless of whether the claim is posed under the PCRA or at an earlier appropriate stage of the litigation. ...

*Commonwealth v. Simmons, 569 Pa. 405, 804 A.2d 625, 639 (2001) (footnote omitted).*

29

## 5. Failure to Challenge the Weight of the Evidence

Here counsel submitted a summary of the principles of law governing weight of the evidence claims and then devotes a single paragraph to the evidence that he claims shows that the Commonwealth failed to prove its case. He simply notes that the witness, Sharee Norton, did not identify the defendant until six months after the incident and claims that she was the only one who did. Counsel himself pointed out above that she did not identify the defendant to the police until she did because she was afraid to, and that second assertion is blatantly not true. She positively identified the defendant as one of the shooters as did another eyewitness and the police officers who chased and arrested him immediately after the incident. As noted above, this court fully set forth all of the evidence in its opinion in the direct appeal and, even though Superior Court did not assess that evaluation because it found the claim to have been waived, the court need not do so again.

> Appellant fails to discuss these claims in the context of the circumstances of the case. Specifically, appellant has failed to make reference in relative fashion to other evidence upon which the conviction was based, and in the absence of that discussion, this court is unable to determine that no reliable adjudication of guilt or innocence could have taken place at appellant's trial. No relief, therefore, is due.

*Id. at 633.* The Commonwealth presented its case over eight days of trial and counsel didn't even mention any of the incriminating evidence it produced, let alone try to show how the simple fact that one single witness's failure to come forward right away would have refuted all that really relevant evidence. The case law is absolutely clear that a PCRA petitioner cannot simply rely on one single fact in evidence, completely ignore all the other damning evidence, and expect to be granted a new trial. The court can summarily dismiss this claim the same way it did with the same argument in his last appeal from the dismissal of his previous PCRA petition.

> As phrased by the defendant in the petitions and *1925(b) Statement*, and putting it in the "performance and prejudice" format as set forth in the above authority, if he had established that he was, in fact, abandoned by his attorney, he

30

was then required to demonstrate that he could prove, (1) that the underlying legal claim, *i.e.*, that the verdict was against the weight of the evidence, has "arguable merit", (2) that counsel's action or omission lacked any reasonable basis designed to serve his interests, *i.e.*, that his attorney should have reasonably been aware that the claim was meritorious and had no reason not to pursue it, and (3) that there is a reasonable probability that the outcome of the proceedings would have been different had counsel not been ineffective in the relevant regard, *i.e.*, that he was prejudiced by counsel's act or omission because a motion to dismiss based on a lack of weight would most likely have been granted or a denial would have been overruled. If he fails to demonstrate any of those three prongs, his claim fails. And if he fails to demonstrate that there is probative evidence that can be developed, the claim can be dismissed without a hearing. Here, the only witnesses the defendant has identified whose credibility can be evaluated are himself and his appellate counsel. However, while his only evidence is his own unsupported allegations, and even those are merely his own subjective assumptions, his attorney supplied documentary evidence to the contrary, and the [*Commonwealth v.*] *Dennis*[*, 597 Pa. 159, 950 A.2d 945, 953-4 (2008)*] Court's admonition is equally directed to the *PCRA* court's determination of the reliability of the defendant's own allegations and any evidence to support it that he claims exists, including his own admission that his appellate counsel averred that he did, in fact, advise the defendant that there was no point in seeking *allocatur*. The defendant fails *ab initio* because he makes no attempt whatsoever to demonstrate the first prong.

He simply states that his attorney was remiss because he failed to preserve a right to request an appeal and he was prejudiced because his verdict was against the weight of the evidence; he makes no attempt whatsoever to demonstrate how or why that was the case. If this were a direct appeal addressed solely to a weight claim, the issue would have been waived for failing to adequately identify in a concise manner the issues sought to be pursued on appeal in the *1925(b) Statement. Commonwealth v. Dowling, 2001 PA Super 166, 778 A.2d 683 (2001).* *Statements* that simply say "the verdict of the jury was against the evidence" or the like have been consistently rejected. *Commonwealth v. Reeves, 2006 PA Super 196, 907 A.2d 1, 2 (2006), appeal denied, 591 Pa. 712, 919 A.2d 956 (2007), and cases cited therein.* This alone would be justification for dismissing the claim outright, but it also demonstrates that he cannot meet the other prongs either; without demonstrating at least a possibility that the weight of the evidence may have been insufficient to convict, he has also completely failed to demonstrate that his counsel should have reasonably been aware that the claim was meritorious and, therefore, had no reason not to pursue it, and that there is a reasonable probability that a motion to dismiss based on a lack of weight would most likely have been granted or a denial would have been overruled.

*Pa.R.A.P. 1925(a) Opinion, September 17, 2012, 1843 EDA 2012.* To call the witness not credible without even mentioning any of her testimony is the epitome of specious argument.

31

Finally, appellant argues that she is entitled to a new trial as the verdict was against the weight of the evidence. We note initially that our scope of review for such a claim is very narrow. *Commonwealth v. Hamilton, 376 Pa.Super. 404, 414, 546 A.2d 90, 95 (1988), allocatur denied, 521 Pa. 629, 558 A.2d 531 (1989).* The determination of whether to grant a new trial because the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent abuse of discretion. *Commonwealth v. Pronkoskie, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982); Commonwealth v. Hunter, 381 Pa.Super. 606, 618, 554 A.2d 550, 555 (1989).* Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. *Commonwealth v. Paquette, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973); Commonwealth v. Hamilton, supra, 376 Pa.Super. at 414, 546 A.2d at 95–96.* The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. *Commonwealth v. Zapata, 447 Pa. 322, 290 A.2d 114 (1972).* A claim that the evidence presented at trial was contradictory and unable to support the verdict requires the grant of a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Id.; Commonwealth v. Hunter, supra; Commonwealth v. Saksek, 361 Pa.Super. 173, 522 A.2d 70 (1987). See also Commonwealth v. Wallace, 522 Pa. 297, 315, 561 A.2d 719, 728 (1989) (citing Commonwealth v. Nelson, 514 Pa. 262, 271, n. 3, 523 A.2d 728, 733, n. 3 (1987), cert. denied, 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987)* (under ordinary circumstances, an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record")). *See also Commonwealth v. Jenkins, 396 Pa.Super. 395, 578 A.2d 960 (1990) and Commonwealth v. McLean, 396 Pa.Super. 23, 578 A.2d 4 (1990)* (explaining that a challenge to the weight of the evidence is reviewable by the Superior Court). We have carefully scrutinized the entire record and have found no basis on which to grant relief to appellant on this claim.

*Commonwealth v. Rochon, 398 Pa. Super. 494, 581 A.2d 239, 244–45 (1990).* Not only did counsel not point to any conflicting evidence, which is understandable since there wasn't any, counsel didn't discuss any evidence at all.

### 6. Newly Discovered Evidence of Dove's Firing and Charges

Counsel stated that he has found "after-discovered evidence" of the fact that one of the officers who participated in this case had been subsequently fired and charged with misconduct involving unspecified "tampering with evidence/witnesses involving investigations led by" him, and that, therefore, he must have done the same things and gotten his fellow officers to do so also

32

in the investigation, arrest and conviction of the defendant. Counsel cited absolutely nothing to support these outrageous accusations. He didn't refer to any evidence of the officer's firing or being charged with anything, nor did he point to any evidence that any tampering occurred in his case. His allegation that the officer was a "key" and "critical" witness against the defendant is simply untrue. Counsel also neglected to mention to what specific facts Detective Dove testified at trial. He was not one of the officers who apprehended this defendant after the assault, and counsel did not state that he was one of the witnesses who identified him at trial. It's not this court's function to search the record to ascertain that information for him, and without his having cited to any facts of record to demonstrate what evidence the officer did produce, the court could safely assume there was none implicating the defendant. As the Commonwealth noted in its motion to dismiss, its case against this defendant certainly did not rise and fall on Detective Dove's participation in the investigation and trial. As it also noted, "… Detective Dove was terminated from employment in November 2013, and pled guilty in April of 2017 for misconduct that occurred in a single unrelated case at the earliest *five years after he testified at defendant's 2005 trial*" and those facts could, therefore, by no means have affected the verdict.

The principles governing claims of after discovered evidence, or better phrased as previously unavailable newly discovered facts, have been thoroughly set forth.

> As indicated *supra,* Appellant's sole contention on appeal is that he is entitled to relief under *42 Pa.C.S.A. § 9543(a)(2)(vi)* on the basis of exculpatory after-discovered evidence. To be entitled to relief under the PCRA on this basis, the petitioner must plead and prove by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." *42 Pa.C.S.A. § 9543(a)(2)(vi).* As our Supreme Court has summarized:

> > To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or

33

cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Pagan, 597 Pa. 69, 106, 950 A.2d 270, 292 (2008)* (citations omitted). "The test is conjunctive; the [appellant] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Commonwealth v. Padillas, 997 A.2d 356, 363 (Pa.Super.2010)* (citation omitted). Further, when reviewing the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case. *Commonwealth v. Reese, 444 Pa.Super. 38, 663 A.2d 206 (1995)*.

After a careful review, we conclude Appellant's "new evidence" regarding the filing of criminal charges against Detective Simon in an unrelated matter does not meet the after-discovered evidence test since such evidence would be used solely to impeach the credibility of Detective Simon and would not likely result in a different verdict if a new trial were granted. *See Pagan, supra.* Specifically, regarding the third prong, related to impeachment evidence, Appellant admits that the primary purpose in presenting the evidence of Detective Simon's criminal charges would be to impeach the detective's credibility and "observational acumen." However, he further argues such evidence is relevant for "non-impeachment purposes" since it calls into question the "chain of custody" and "evidence handling procedures" regarding the confiscation of the handgun. Appellant notes that Detective Simon did not request the handgun recovered from Appellant's pants be tested for fingerprints, thus suggesting the handgun was actually never in Appellant's possession. Inasmuch as Detective Simon testified during Appellant's suppression hearing and trial that he removed the handgun from Appellant's pants, Appellant's argument regarding the lack of fingerprinting testing challenges Detective Simon's credibility. Thus, we conclude the sole reason Appellant is seeking to introduce evidence regarding Detective Simon's criminal charges is to impeach the testimony, which the detective gave during Appellant's proceedings. *Pagan, supra.*

Regarding the fourth prong, related to whether the new evidence would result in a different verdict if a new trial were granted, Appellant has failed to show any nexus between his case and Detective Simon's alleged misconduct in an incident, which occurred more than two years after Appellant's conviction. *See Commonwealth v. Soto, 983 A.2d 212 (Pa.Super.2009)*. Additionally, Appellant admits in his appellate brief that, subsequent to the PCRA proceedings in this case, "Detective Simon was found not guilty of all of the charges filed against him." Thus, Appellant's assertion that Detective Simon committed misconduct in his case is pure conjecture and would not compel a different jury verdict. *See Soto, supra.*

*Commonwealth v. Foreman, 2012 PA Super 226, 55 A.3d 532, 536–38 (2012)* (footnote and

34

citations to record omitted). Like Foreman, although defense counsel here did not mention the word credibility, his specification of for what this "evidence" of Dove's alleged improprieties would be used is precisely that. The claim fails for the same reasons Foreman's did: Counsel did not say when this evidence was discovered, and thus the court cannot discern (1) whether it could not have been obtained prior to the conclusion of the defendant's trial by the exercise of reasonable diligence; (3) it would only be used solely to impeach the credibility of the Officer; and, given all of the incriminating evidence, (4) would most decidedly not have resulted in a different verdict if a new trial were granted. The key to the after discovered evidence rules are that the evidence, **if it had been produced at trial would have altered the outcome of the case.** This evidence could not have been used at trial since it did not exist; the rule calls for the discovery of facts that did exist but were not ascertainable by the defendant at the time. Facts that occur long after the trial are not applicable. This defendant is not the only one to attempt this ploy with regard to Detective Dove.

> [For his after discovered evidence claim,] Appellant relies on a March 3, 2014 newspaper article concerning Detective Ronald Dove, who investigated appellant's case. According to the article, Detective Dove was fired from the Philadelphia police force amid allegations that he helped his girlfriend, Erica Sanchez, flee the city after she murdered her ex-boyfriend. The newspaper article, in and of itself, is not "evidence." Furthermore, there is no allegation that Detective Dove acted improperly in investigating appellant's case. As the PCRA court observed, "the allegations against Detective Dove are confined to conduct stemming from a personal matter and are not averments of widespread corruption." Although appellant alleged that Detective Dove was "not providing credible information," he failed to specify what misleading information Detective Dove provided. Recently, this court addressed a similar issue relating to an after-discovered evidence claim based on the allegations surrounding Detective Dove:
>
> > We acknowledge that in [*Commonwealth v. Castro, 93 A.3d 818, 821 (Pa. 2014)*], our Supreme Court held that allegations in a newspaper article "do not constitute evidence" and thus, were not sufficient to support a motion for an evidentiary hearing or a new trial. The Supreme Court specifically stated:

35

> [a]llegations in the media, whether true or false, are
> no more evidence than allegations in any other out-
> of-court situation. Nothing in these allegations even
> read in the broadest sense, can be described as
> "evidence," and references to the officer being
> under investigation for misconduct contains no
> information regarding what evidence existed to
> substantiate this averment. One cannot glean from
> these bald allegations what evidence of misconduct
> appellee intended to produce at the hearing.

*Castro*, [ ] *93 A.3d at 825*. As "an evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim," the Supreme Court concluded that Castro "needed to do more than present an article pointing to allegations that if true have the potential to aid his cause; he needed to clearly articulate in his motion what evidence he would present to meet the test." *Id. at* [ ] *828*.

*Commonwealth v. Brown, 134 A.3d 1097, 1108-1109 (Pa.Super. 2016)*.

> With respect to the allegations regarding Detective Dove,
> Appellant solely relies on the newspaper article reporting on
> Dove's possible misconduct and does not articulate what evidence
> he would present at the evidentiary hearing on remand. In
> accordance with *Castro*, the article concerning Detective Dove
> does not constitute after-discovered evidence that entitles
> Appellant to a new trial.

*Id. at 1109*.

In addition, as the Commonwealth points out, the only conceivable purpose in presenting Detective Dove's alleged misconduct in an unrelated matter would be to impeach his credibility. As such, appellant has not shown that he is entitled to PCRA relief by presenting after-discovered evidence that will not be used solely to impeach a witness's credibility. *[Commonwealth v.] D'Amato, [579 Pa. 490,] 856 A.2d [806 (2004)] at 823*.

Moreover, the evidence in appellant's case was overwhelming[, which the Court went on to describe in some detail].

*Commonwealth v. Richburg, 158 A.3d 183, No. 3252 EDA 2015, 2016 WL 5210845, at \*3-4*

*(Pa. Super. Ct. Sept. 20, 2016)* (unpublished memorandum, citations to record omitted). The

court is fully aware that unpublished memoranda are not to be cited as legal precedent[5], but the underlying facts regarding Officer Dove and defendants' attempt to utilize them here as Richberg and Brown tried to do renders both cases, for all practical purposes, virtually *res judicata*, and the *Brown* opinion was published.

> ... One article from the *Philadelphia Inquirer*, dated November 21, 2013, reports that Detective Dove was suspended from his duties pending an internal investigation into allegations that Dove [was] covering up homicides connected to his girlfriend, Erica Sanchez. ...
>
> * * *
>
> With respect to the allegations regarding Detective Dove, Appellant solely relies on the newspaper article reporting on Dove's possible misconduct and does not articulate what evidence he would present at the evidentiary hearing on remand. In accordance with *Castro*, the article concerning Detective Dove does not constitute after-discovered evidence that entitles Appellant to a new trial.

*Brown, supra, A.3d at 1108, 1109.* For all the court could tell, this defendant relied on the same newspaper article upon which those defendants relied as the sole basis for this claim. "Absent identification of the actual testimony, physical evidence, documentation, or other type of evidence to support the allegations of Officer Cujdik's wrongdoing, we cannot conclude appellee had evidence to offer; to conclude otherwise would be speculation." *Castro, supra, at 827.*[6]

## IV. CONCLUSION

Counsel's final claim, contained only briefly in his prayer for relief, is that the PCRA court erred in refusing to conduct a hearing. Other than Detective Dove's unfortunate behavior, counsel did not allege the existence of any evidence or witnesses that he would have produced at a hearing. The only factual evidence to which he referred was evidence that was already in the record. If counsel wished to have been given an opportunity to develop any factual bases for his

---

[5] "An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of [*inter alia*] res judicata ... *Pa.St.Super.Ct. IOP § 65.37.*

[6] Counsel ended the amended petition by citing and briefly discussing other issues the defendant wished to raise and concluded that they lacked merit. The court agreed with counsel's assessment and need not discuss those issues here.

37

other claims of counsel ineffectiveness with regard to the fee issue's effect on, and the preparedness and capability of the performance of, assigned counsel, and whether Wesley would have testified, it was incumbent upon him to identify that evidence, other than his own and his client's unsupported assertions. The only real evidence he cited for the claims was already on the record, and counsel only cited a mere paucity of that.

> Appellant's first complaint concerning the PCRA proceedings is the denial of an evidentiary hearing on issues [of ineffective assistance for failing to object to V [unconstitutionally obtained statements], VIII, IX [prosecutor's improper closing], and XI [unconstitutional death sentence, VIII being the failure to properly cross examination one of the state's witnesses]. He claims each of these issues involved a legitimate, material factual dispute requiring a hearing.

> A PCRA court is only required to hold a hearing where the petition, or the Commonwealth's answer, raises an issue of material fact. *Pa.R.Crim.P. 909(B)(1)-(2)*. When there are no disputed factual issues, an evidentiary hearing is not required. *Id.; Commonwealth v. Morris, 546 Pa. 296, 684 A.2d 1037, 1042 (1996)* (citation omitted). If a PCRA petitioner's offer of proof is insufficient to establish a *prima facie* case, or his allegations are refuted by the existing record, an evidentiary hearing is unwarranted. *See Commonwealth v. Hutchinson, 611 Pa. 280, 25 A.3d 277, 320 (2011)* (citation omitted); *Commonwealth v. Walker, 613 Pa. 601, 36 A.3d 1, 17 (2011)*.

> There was sufficient information in the record for the PCRA court to decide issues V, VIII, IX, and XI without a hearing. There was no issue of material fact in issue V because voluminous evidence of appellant's mental health was introduced during hearings on other issues, and appellant's Sixth Amendment right to counsel argument turned on a question of law. There was no issue of material fact in issue VIII because it was frivolous as a matter of law. There was no issue of material fact in issue IX because it pertains to closing statement comments by the prosecutor already captured in the record. There was no issue of material fact in issue XI because the jury statements proffered as the only evidence in support of the claim were inadmissible as a matter of law. Thus, the PCRA court did not err by refusing a hearing on these issues.

*Commonwealth v. Eichinger, 631 Pa. 138, 108 A.3d 821, 849–50 (2014)*.

> With regard to Appellant's claim that the court erred in denying him an evidentiary hearing on his claim of ineffective assistance of counsel, it has been held that:

>> The right to an evidentiary hearing on a post-conviction petition is not absolute. A PCRA court may decline to hold a hearing if the

38

> petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence. A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing.

*Commonwealth v. Jordan, 772 A.2d 1011, 1014 (Pa.Super.2001)* (internal citations omitted). "The controlling factor in determining whether a petition may be dismissed without a hearing is the status of the substantive assertions in the petition." *Commonwealth v. Weddington, 514 Pa. 46, 50, 522 A.2d 1050, 1052 (1987).*

As discussed above, Appellant's substantive claim deals with testimony evidencing his presence in Victim's vehicle. A review of the record reveals that there exist no genuine issues of material fact concerning this issue; in fact, Appellant acknowledges his presence therein. As such, the trial court did not err in dismissing Appellant's PCRA petition without an evidentiary hearing.

*Commonwealth v. Payne, 2002 PA Super 62, 794 A.2d 902, 906–07 (2002)* (citation to record omitted), *appeal denied, 570 Pa. 685, 808 A.2d 571 (2002).* Counsel here cited to precisely three matters of record: private counsel's withdrawal, trial counsel's assignment and employment, and Norton's testimony. The only non-record fact alleged was Detective's Dove's subsequent conduct, which was not a "fact" until five years after the defendant's trial. Every other factual assertion he made was pure baseless speculation. Wherefore, the court's dismissal of the defendant's PCRA petition without a hearing should be affirmed.

**BY THE COURT:**

**WILLIAM MAZZOLA, J.**

39

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA   :   CP-51-CR-0203312-2005
  CP-51-CR-0204542-2005
**v.**   CP-51-CR-0204551-2005

RONALD ALSTON

SUPERIOR COURT
NO. 363 EDA 2018

### PROOF OF SERVICE

I hereby certify that I am this day serving the forgoing Court Order upon the persons, and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114.

**Defendant:**                          Ronald Alston
                                         SCI Fayette
                                         PO Box 9999
                                         La Belle, PA 15450

**Type of Service:** ( ) Personal () First Class Mail  Other, please specify: __CERTIFIED__

**Counsel:**                       Peter Alan Levin
                                         1927 Hamilton Street
                                         Philadelphia, PA 19130

**Type of Service:** ( ) Personal  (X) First Class Mail  Other, please specify: _____

**Philadelphia District Attorney:**     Hugh J. Burns
                                         District Attorney's Office
                                       Three South Penn Square
                                       Philadelphia PA 19107-3499

**Type of Service:** ( ) Personal ( X) First Class Mail Other, please specify:_____

**Additional Counsel/Party:**     Natasha Lowe, Esq.
                                         Supervisor, PCRA/Appeal Unity
                                       #206 CJC
                                       Philadelphia, PA 19107

**Type of Service:** ( ) Personal ( ) First Class Mail Other, please specify: Inter-Office_____

**Dated: April 16, 2018**

_Kuyb_____